UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| DAVID CRAWLEY, | ) | |
| Plaintiff, | ) | Civil Action No. 7:14cv300 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| GEORGE HINKLE, *et al.*, | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff David Crawley, a state prisoner proceeding *pro se*, has filed suit under 42 U.S.C.

§ 1983 alleging that the five defendant prison officials violated his rights under the First, Eighth,

and Fourteenth Amendments to the United States Constitution. Am. Compl. ¶¶ 1–9, ECF No. 13.

The Defendants moved for summary judgment, ECF No. 25, and Crawley responded, ECF Nos.

28, 39. Crawley also filed a motion to voluntarily dismiss one claim and to amend his complaint,

ECF No. 30, which the Defendants oppose in part, ECF No. 31.

The motions are before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 33.

Having considered the parties' pleadings, all supporting materials, and the applicable law, I

respectfully recommend that the presiding District Judge grant Crawley's motion to dismiss

Claim 4, grant the Defendants' motion for summary judgment on the remaining claims, and deny

Crawley's motion to amend as futile.

I. Standards of Review

*A.    Summary Judgment*

Summary judgment is appropriate only if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v.

Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when they

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

1

477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact," *Appalachian Power Co. v. Arthur*, 39 F. Supp. 3d 790, 796 (W.D. Va. 2014), by "pointing out to the district court . . . an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party makes that showing, the nonmoving party must then produce sufficient admissible evidence to establish a specific material fact genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When deciding a summary-judgment motion, the court must accept well-pled factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the materials cited, if not the record as a whole. *See* Fed. R. Civ. P. 56(c)(3); *Tolan*, 134 S. Ct. at 1866; *Scott*, 550 U.S. at 380. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the evidence reveals a genuine issue of material fact for trial. *See Tolan*, 134 S. Ct. at 1866; *Scott*, 550 U.S. at 380–81.

B.     *Motion to Amend*

Leave to amend a complaint should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). The court should deny leave "only where good reason exists," *Franks v. Ross*, 313 F.3d 184, 189 n.15 (4th Cir. 2002), such as when amending would be futile, *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). A proposed amendment "may properly be found futile where, as a matter of law, it fails to state a claim" against the putative defendant. *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 712 (W.D. Va. 2008).

2

## II. Background

Crawley is an inmate at Wallens Ridge State Prison ("WRSP") in Wise County, Virginia. Compl. 1, ECF No. 1. His lawsuit stems from a November 2013 disciplinary conviction for possessing unauthorized or unprescribed drugs, in violation of prison policy. *See id.* at 2; Am. Compl. ¶¶ 1–9; *see also* Va. Dep't of Corr., Operating Proc. 861.1 § 122(a), Sept. 1, 2011, ECF No. 26-3. At 7:15 a.m. on November 5, 2013, Crawley was taking a shower out of his cell, Pl. Aff. ¶ 1, ECF No. 13-1, which was in WRSP's segregation unit, *see* Sturgill Aff. ¶ 5, Feb. 6, 2015, ECF No. 26-2. Around the same time, officers S. Isbell and M. Sturgill removed from Crawley's cell[1] two cups containing pills and crushed up medication. *See* Disciplinary Offense Report 1, Nov. 5, 2013, ECF No. 26-2.

---

[1] The parties dispute whether Isbell was alone in Crawley's cell, or whether Sturgill was with Isbell the entire time. *Compare* Am. Compl. ¶¶ 1, 3, *and* Pl. Aff. ¶¶ 1–3; *with* Isbell Aff. ¶ 4, ECF No. 26-1, *and* Sturgill Aff. ¶¶ 4–5, ECF No. 26-2. Crawley alleges that Isbell was alone in the cell, which allowed Isbell to "plant some pill form substance" there so Sturgill could file a "bogus drug possession charge against" Crawley. Am. Compl. ¶¶ 2–3. The Defendants respond that Isbell and Sturgill searched the cell together because, per prison policy, "[o]fficers are not permitted to enter [an] offender's cell without another staff member." Isbell Aff. ¶ 4.

In January 2014, Crawley asked WRSP to preserve "for future litigation" a surveillance video that he believed would show Isbell enter his cell alone on the morning of November 5, 2013. Informal Compl., Jan. 3, 2014, ECF No. 36. On March 26, 2014, WRSP Unit Manager J. Collins responded, "Per Policy Video Surveillance must be granted by [a] Court of Law." *Id.*

On February 26, 2015, Crawley filed a motion "for more time and discovery," ECF No. 29, which the Court construed as an attempt to preserve access to potentially relevant information—including the surveillance video—should Crawley's claims survive summary judgment. *See* ECF No. 30. In his motion, Crawley noted that Collins "assured" him in January 2014 that the video "would be produce[d] upon the court['s] request." The Defendants argued that the Court should not allow any discovery until it ruled on their qualified-immunity defense. *See* Def. Resp. in Opp. 3, Mar. 9, 2015, ECF No. 32. The Court granted Crawley's motion in part and ordered the Defendants to produce two written statements from an officer who was at the scene on November 5. ECF No. 34. It denied the motion without prejudice as to Crawley's other requests, and noted that Crawley could seek additional discovery by serving a request on the Defendants after the Court ruled on their motion for summary judgment. *Id.* The Defendants complied with the Court's order to produce the officer's statements.

On May 25, 2015, Crawley asked the Court to order the Defendants to produce a copy of the surveillance video, among other things. ECF No. 36. The Defendants did not specifically address the

3

At 8:46 a.m., Sturgill submitted a Disciplinary Offense Report charging Crawley with possession of unauthorized or unprescribed drugs. *Id.* Sturgill alleged that, at 7:30 that morning, "[he] and [O]fficer Isbell performed a random cell inspection on" Crawley's cell after "seeing pills in a cup on the sink. Upon further inspection, [the officers] discovered numerous pills and crushed up medication in two cups."[2] *Id.* Another officer served written notice of the charge on

surveillance video in their response, ECF No. 37, although they asserted in other filings that Isbell was never alone in Crawley's cell, *see, e.g.*, Def. Br. 3–4, ECF No. 26. On June 30, 2015, the Court granted the motion with respect to the surveillance video and ordered the Defendants to show the video to Crawley and to produce a copy for the Court's review within 10 days. ECF No. 40.

On July 9, 2015, the Defendants responded that they could not comply because "the requested video recording was not retained by prison staff." Def. Resp. ¶ 10, ECF No. 41. They explained that the digital video recorder ("DVR") in Crawley's housing unit "continuously records footage . . . for approximately 35–40 days before it begins to overwrite the recorded footage." *Id.* Thus, "footage from November 5, 2013[,] would not have remained on the DVR after December 15, 2013[,] but would have been written over with new footage by that time." *Id.*

Whether Isbell was alone in the cell does not matter in this case because Crawley has not produced any admissible evidence that the officer "planted" the drugs there. *See, e.g.*, *White v. Wright*, 150 F. App'x 193, 199 (4th Cir. 2005) (per curiam) (recognizing a due-process right not to be deprived of liberty or property "as a result of fabrication of evidence by a government officer acting in an investigatory capacity," but holding that the plaintiff's "unsupported allegations and speculation of fabrication" were not enough for the claim to survive summary judgment). Crawley ultimately contested the disciplinary charge in a fair hearing and his conviction and sentence are supported by sufficient evidence in the record. *See, e.g.*, *Richardson v. Ray*, 492 F. App'x 395, 396 (4th Cir. 2012) (per curiam) ("Absent some evidence . . . that his disciplinary conviction was improperly obtained, Richardson's assertions that the initial charge was false cannot state a claim" under 42 U.S.C. § 1983); *see also Riccio v. Fairfax Cnty*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state [policy] grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that [policy] is not a federal due process issue.").

Although I do not make any finding as to spoliation, the Court reminds all litigants that a party's failure to preserve relevant information, "once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009). District courts have broad authority to remedy spoliation through sanctions ranging from dismissal or default judgment to the imposition of an adverse inference, *id.* at 506, that the "spoliator was aware that the [missing] evidence would have been detrimental" to his case, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 535 (D. Md. 2010) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

[2] That afternoon, "Officer Sturgill showed medical staff a large amount of pink pills (crushed and not crushed) in three separate cups that Crawley had hoarded in his cell." Stanford Aff. ¶ 5, Feb. 5, 2015, ECF No. 26-5. Medical staff determined that the pills were Elavil 100 mg tablets. *Id.* The next day, "Crawley's Elavil was stopped" per the prison psychiatrist's orders. *Id.* ¶ 6.

4

Crawley at four o'clock that afternoon. *See id.* Crawley indicated that he wanted to appear at a disciplinary hearing with a staff advisor. *See id.* He expressly waived his right to request witnesses or documentary evidence. *See id.*

W.R. Hensley held a disciplinary hearing on November 19, 2013. *See id.* at 2. At the hearing, Sturgill testified that he and Isbell searched Crawley's cell on November 5, 2013, while Crawley was in the shower. *Id.* "During the search, Officer Sturgill found and confiscated two pill cups with several pills and also crushed up medicine." *Id.* Hensley noted that, when offered a chance to examine the confiscated substance, "Crawley stated that he had never seen the medication before." *Id.* Hensley credited Sturgill's report and testimony. *See id.* He also rejected Crawley's denial, noting that "Crawley was the only offender in the cell and the pills were not self medication." *Id.* Hensley found Crawley guilty and sentenced him to pay a $12.00 fine.

Crawley appealed his conviction to Warden Gregory Holloway. *See* Disciplinary Appeal 1, Dec. 5, 2013, ECF No. 3. Many of his arguments challenged the prison's failure to test the confiscated substance to ensure that it in fact contained "drugs." *See id.* ¶¶ 1–3, 6. On December 10, 2013, Holloway issued a five-page memorandum upholding Hensley's decision based on his review of the tape-recorded proceedings and the documentary evidence presented to Hensley. *See* Holloway Mem. 1–5, ECF No. 3.

According to Holloway, Sturgill testified that he found "two cups of crushed and whole medications" of an "unknown origin" in Crawley's cell. *Id.* at 1. Crawley did not dispute that the substance was "medication" or demand that it be chemically analyzed. *See id.* at 2–4. He argued only that the "medication could have been Tylenol or Advil" rather than his prescription "psychotropic medication." *Id.* at 4 ("The offender said that the medical staff was told that some of the offender's medicines were found in the cell."). Hensley replied that "it did not matter what

type of drug was found in [Crawley's] cell" because, "unless [he] was authorized to self-medicate," Crawley "should have consumed any prescribed medication at the time it was given to [him]." *Id.* at 1. Thus, "any drugs found in the cell would be considered unauthorized medications." *Id.* Hensley also explained "that medications purchased from the commissary," such as Advil or Tylenol, "had to remain in the package until used." *Id.* Holloway noted that the "medications were collected in two cups, some crushed and some whole[,] making [them] unauthorized drugs" regardless of their source or chemical composition. *Id.* at 4–5.

Regional Administrator George Hinkle affirmed Holloway's decision on February 18, 2014. *See* Hinkle Mem. 1–2, ECF No. 3. Hinkle conceded that "the pills were never tested for authenticity," but noted that Crawley never argued that "they might be something other than pills, such as [non-drug] contraband." *Id.* at 1. Rather, "[Crawley] repeatedly argued that the pills could have been Tylenol[] or Advil." *Id.* Hinkle also agreed that "prescription medication must be ingested in the manner for which it is prescribed and that other pills obtained through commissary must remain in their original packaging until used." *Id.* at 2. Thus, the mere fact that the pills were found in a cup rendered them "unauthorized or unprescribed drugs." *See id.*

In June 2014, Crawley filed suit against Hinkle, Holloway, Hensley, Isbell, and Sturgill alleging that they violated his rights under the First, Eighth, and Fourteenth Amendments. Seven of Crawley's nine claims challenge his disciplinary conviction and sentence on due-process grounds. Amend. Compl. ¶¶ 1, 3, 5–9; *see also* Pl. Aff. ¶¶ 1, 5–10; Pl. Decl. in Opp. ¶¶ 5, 8, 10–18, ECF No. 28-1. Crawley also alleges that Sturgill filed a "false drug charge" against him on November 5, 2013, because another disciplinary charge "involving" the officer was dismissed earlier that day. Am. Compl. ¶ 2. Finally, Crawley alleges that Hensley was deliberately indifferent towards his serious mental-health needs because he told the medical staff that

Crawley was "hoarding medicine, which led to medical calling mental health[,] who notified the psychiatrist," who discontinued Crawley's psychotropic medication. Am. Compl. ¶ 4.

Crawley seeks "expungement of the [disciplinary] conviction, reimbursement of the $12.00 fine, [a] permanent injunction precluding all drug conviction[s] without test[ing], and drug convictions for self-meds or commissary purchase meds outside package not consumed [sic], [and] monetary and punitive damages, jointly, [of] $1,750.00" against the Defendants in their official and individual capacities. *Id.* ¶ E. The Defendants collectively moved for summary judgment on qualified-immunity grounds[3] and on the merits of each of Crawley's claims. *See* Def. Br. 7–9, 9–10, 10–12, 12–13, ECF No. 26.

In February 2015, Crawley filed a second motion to amend his complaint. He seeks to voluntarily dismiss Claim 4 against Hensley and to add two claims alleging that Sturgill and Isbell were deliberately indifferent towards his serious mental-health needs. Mot. to Amend 1–2. The Defendants do not oppose the motion to dismiss Claim 4. Def. Br. in Resp. 3. They argue that Crawley's proposed amendments are futile, however, because any "Eighth Amendment

---

[3] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant moves for summary judgment on these grounds, the court may first decide whether the facts alleged, viewed in the plaintiff's favor, "show that the government official's actions violated the plaintiff's constitutional rights." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *see also Plumhoff v. Rickard*, --- U.S. ---, 134 S. Ct. 2012, 2020 (2014). If they do not, then the defendant is entitled to summary judgment on the merits. *See Saucier*, 533 U.S. at 201. If the plaintiff's well-pled allegations clear this threshold, however, the court then "must determine whether the right at issue was 'clearly established' at the time of the events in question." *Danser*, 772 F.3d at 346.

"An official asserting the defense of qualified immunity bears the burden of proof with respect to that defense." *Id.* at 345. In this case, the Defendants argue that the undisputed material facts establish that they did not violate Crawley's First, Eighth, or Fourteenth Amendment rights. *See generally* Def. Br. 7–13. They only cursorily argue that they are "entitled to qualified immunity [because] a reasonable person in their position could have failed to appreciate that his conduct would violate those rights," *Danser*, 772 F.3d at 346. *See* Def. Br. 13.

claim against Isbell and Sturgill fails for the same reasons as [the] Eighth Amendment claim against Hensley fails." *Id.* (citing Def. Br. 10–12).

## III. Discussion

*A.*    *Due Process*

Crawley primarily challenges his conviction and sentence on due process grounds. *See* Am. Compl. ¶¶ 1, 3, 5–9. Claims 1 and 3 charge that Isbell and Sturgill planted the pills in Crawley's cell and filed a false drug-possession charge against him. *Id.* ¶¶ 1, 3. Claims 5, 6, and 7 charge that Hensley "prejudged [the] evidence" by telling medical staff that Crawly was "hoarding [his] medication," "repeatedly responded for [Sturgill] during the hearing," and "repeatedly rejected [Crawley's] argument" that a "substance without identification markings must be tested to identify whether [it] is actually a drug." *Id.* ¶¶ 5–7. Claims 8 and 9 charge that Holloway and Hinkle are liable for these due-process violations because they upheld Crawley's "unlawful drug conviction," *id.* ¶ 9, "knowing that the substance was never tested," *id.* ¶ 8.

To prevail on any due-process claim, Crawley "must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law."[4] *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Thus, due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "To determine what procedural protections the Constitution requires in a particular case," courts balance (1) the private interest affected by the government action; (2) the risk of erroneous

---

[4] The Defendants do not dispute that Crawley has a protected property interest in the $12.00 that was deducted from his prison account, *see* 861.1 § VIII.O.2, to satisfy his sentence, Amd. Compl. ¶ E. *See Burks v. Pate*, 119 F. App'x 447, 450 (2005) (per curiam) ("A prisoner has a protected property interest in his prison trust account.").

deprivation through the existing procedures and the probable value, if any, of alternative or additional procedures; and (3) the burden added safeguards would impose on the state's fiscal and administrative interests. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Crawley has a constitutional right not to be deprived of his property "as a result of fabrication of evidence by a government officer acting in an investigatory capacity." *White*, 150 F. App'x at 199. The Defendants respond that no evidence supports Crawley's allegations that evidence was planted or fabricated, and that Isbell only recovered the pills after seeing them in a cup on Crawley's sink. *See* Disciplinary Offense Report 1; Isbell Aff. ¶ 4; Sturgill Aff. ¶ 4. That shifts the burden to Crawley to produce admissible evidence establishing a specific material fact genuinely in dispute. *See Celotex Corp.*, 477 U.S. at 325.

Crawley's responses merely repeat his "unsupported allegations and speculation," *White*, 150 F. App'x at 199, that Isbell planted the pills in Crawley's cell so that Sturgill could "frame" him. *See generally* Pl. Br. in Opp. 1–2, ECF No. 28; Pl. Supp'l Br. in Opp. 1–4, ECF No. 39. He has not offered any admissible sworn statements supporting his "belief," Pl. Aff. ¶ 1, that Isbell was alone in the cell, let alone that the officer fabricated evidence.[5] *See* Fed. R. Civ. P. 56(c)(4). Indeed, Crawley admitted at his disciplinary hearing that he was in the shower when his cell was searched and that he did not see who went into his cell. *See* Holloway Mem. 4 ("Crawley said that he was in the shower and someone called him from the cell telling [him] that his cell was being searched."). Crawley's unsupported allegations do not create a "genuine issue for trial" on this claim. *Scott*, 550 U.S. at 380; *accord White*, 150 F. App'x at 199.

---

[5] While the Court would prefer to have the benefit of reviewing the surveillance video itself, Crawley does not contend, and no evidence suggests, that the video would show what actually happened inside Crawley's cell. It may merely have resolved the disputed, but ultimately immaterial, fact that Isbell was (or was not) alone in Crawley's cell. *See supra* n.1.

9

Crawley's allegations against Sturgill do not state a free-standing claim under 42 U.S.C. § 1983 because Crawley "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct [that] may result" in the loss of his liberty or property. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Richardson*, 492 F. App'x at 396; *Dougherty v. Virginia*, No. 7:14cv66, 2014 WL 3549003, at *6 (W.D. Va. July 17, 2014) ("[Plaintiff's] mere allegation that officers brought allegedly unfounded disciplinary charges against him does not state any constitutional claim actionable under § 1983."). Rather, he has the right to contest those charges through whatever process the Fourteenth Amendment guarantees in his particular situation. *See Freeman*, 808 F.2d at 951.

A prisoner charged with "serious misconduct" is entitled to (1) written notice of the charge at least 24 hours before his disciplinary hearing, (2) a limited opportunity to call witnesses and present documentary evidence, (3) a hearing before an impartial factfinder, and (4) a written record of the hearing officer's findings and the evidence relied upon in convicting him. *See Wolff v. McDonnell*, 418 U.S. 539, 565–66 (1974); *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976). There also must be "some evidence" supporting the hearing officer's findings. *Super'nt, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). This standard is satisfied when there is "any evidence in the record that could support" the deprivation of the prisoner's protected interest. *Id.*

The Defendants argue that Crawley received all the process he was due under *Wolff* and *Hill*. Def. Br. 7–9. They point out that Crawley received a written copy of the drug-possession charge, waived his right to request witnesses or documentary evidence, had two weeks to prepare for the hearing, attended the hearing in person, questioned Sturgill on the record, personally examined the confiscated substance, spoke on his own behalf, and received a written explanation

10

of Hensley's findings and conclusions.[6] *See* Disciplinary Offense Report 1–2; Holloway Mem. 1–5; Hinkle Mem. 1–2; *see also* Hensley Aff. ¶¶ 6–9; Isbell Aff. ¶ 5. Crawley does not contest these material facts. *See generally* Pl. Br. in Opp. 1–2; Pl. Supp'l Br. in Opp. 1–4.

Instead, Crawley argues that he was entitled to *more* process—i.e., chemical analysis confirming that the confiscated substance was a "drug." The Constitution confers no such protection on inmates contesting misconduct charges in prison disciplinary hearings. *Cf. United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976) ("[L]ay testimony and circumstantial evidence may be sufficient, without the introduction of expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction."); *see also Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Moreover, Crawley admitted that the "pills" recovered from his cell were "medication" of some sort. *See* Holloway Mem. 4; Hinkle Mem. 1. Hensley and the subsequent reviewers noted that even improperly storing over the counter medication, i.e. taking medication out of its packaging and storing it in a cup, constitute a violation of policy.

Although "there was no direct evidence identifying" the confiscated substance, "the record is not so devoid of evidence that" Hensley's findings "were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. For example, Sturgill's testimony, which the hearing officer deemed credible, provides "some basis in fact," *id.*, supporting Hensley's determination that Crawley possessed an unauthorized or unprescribed drug. *Donohue v. Lambert*, No. 7:13cv397, 2014 WL 4825258, at *12 (W.D. Va. Sept. 25, 2014) ("If the hearing officer finds the reporting

_____

[6] They also point out that Hensley was not involved in Crawley's case before conducting the hearing on November 19, 2013. *See* Hensley Aff. ¶¶ 4–10, Feb. 5, 2015, ECF No. 26-3. Crawley no longer contends that Hensley alerted the medical staff that Crawley was hoarding his medications. *See* Mot. to Amend 1.

officer's testimony credible, that report is sufficient evidence on which to rest a finding of guilty."). Nothing more was constitutionally required. *See Hill*, 472 U.S. at 457. Therefore, the Defendants are entitled to judgment as a matter of law on Claims 1, 3, and 5–9.

B.    *Retaliation*

Crawley also claims that Sturgill "filed a false [charge] in retaliation" for another disciplinary charge "involving" the officer that was dismissed the same day. Am. Compl. ¶ 2. A retaliation claim is cognizable under 42 U.S.C. § 1983 if the plaintiff alleges specific facts showing that a state official's purported "retaliatory act was taken in response to [the plaintiff's] exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "In the prison context, [courts] treat such claims with skepticism because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (internal brackets omitted).

Crawley avers that at "[a]round 8:30 a.m." on November 5, 2013, he "went to a hearing that involved M.B. Sturgill," at which unidentified disciplinary charges "were dismissed." Pl. Aff. ¶ 3. He recalls Sturgill "whisper[ing] in [his] ear that he bet [Crawley] wouldn't get off next time." *Id.* At four o'clock that afternoon, another officer served Sturgill's drug-possession charge on Crawley.[7] *Id.* Crawley, however, does not allege any facts suggesting that the drug-possession charge itself violated a constitutionally protected right or that Sturgill lodged the charge "in response to" Crawley exercising such a right. *See Dougherty*, 2014 WL 3549003, at *6

---

[7] Sturgill responds that he wrote the drug-possession charge "because Crawley had unauthorized pills in his cell on November 5, 2013," and he claims "no knowledge of another charge being dismissed" on the same day. Sturgill Aff. ¶ 6.

12

("Dougherty had no constitutional right [against] being charged with disciplinary infractions."). These omissions entitle Sturgill to judgment as a matter of law on Claim 2.

C.     *Deliberate Indifference*

Crawley next claims that Hensley was deliberately indifferent to his serious mental-health needs because Hensley told medical staff that Crawley was "hoarding medicine," which "led to" medical staff withholding Crawley's psychotropic medication. Am. Compl. ¶ 4.

"A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A deliberate-indifference claim has "two components, objective and subjective. Objectively, the inmate's medical condition must be serious" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted).

Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The subjective component is an "exacting standard" that demands proof of intent beyond mere negligence, errors in judgment, or inadvertent oversights. *Id.* Non-medical prison officials can be held liable under 42 U.S.C. § 1983 only if "they were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to a prison doctor's misconduct." *Chamberlain v. Russell*, No. 7:13cv266, 2014 WL 824009, at *3 (W.D. Va. Mar. 3, 2014) (citing *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990), *abrogated on other grounds by Farmer*, 511 U.S. 825)).

13

Hensley argues that Crawley cannot satisfy the claim's objective component because his allegations "suggest only that he was taking psychotropic medication for 90 days while in prison"—they do not describe the "condition with which he was diagnosed that required a [prescription for] psychotropic medication." Def. Br. 11. The Defendants' own witness, however, avers that "[o]n November 6, 2013, pursuant to orders by the [p]sychiatrist, Doctor McDuffie, Crawley's Elavil was stopped for his safety." Stanford Aff. ¶ 6.[8] Three months later, Everett McDuffie, M.D., restarted Elavil because Crawley was not tolerating other prescription antidepressants. *See* WRSP Med. Progress Note, Feb. 12, 2014, ECF No. 26-5. This evidence is sufficient to show that Crawley's psychiatric condition was "objectively serious" in the sense that it had "been diagnosed by a physician as mandating treatment." *Jackson*, 775 F.3d at 178.

Hensley, however, has also demonstrated an absence of evidence supporting the claim's subjective component. Hensley explains, "I did not contact the medical department regarding Crawley's medication. . . . I had no involvement in the administration of Crawley's medication." Def. Br. 11–12; Hensley Aff. ¶ 10. Crawley has since moved to voluntarily dismiss this claim, noting that the Defendants' affidavits indicate that Sturgill and Isbell, not Hensley, contacted medical staff about the recovered pills. Mot. to Amend 1; Pl. Br. in Opp. 1–3; *see also* Stanford Aff. ¶¶ 5–6; Isbell Aff. ¶ 4; Hensley Aff. ¶10.

The Defendants do not oppose Crawley's motion to dismiss his Eighth Amendment claim against Hensley. Def. Br. in Resp. 3. Accordingly, I recommend that the District Court **GRANT** Crawley's motion, *see* Fed. R. Civ. P. 41(a)(2), and **DISMISS** Claim 4 **without prejudice**. *See Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987).

---

[8] Nurse Stanford further states that "[o]n November 5, 2013, at approximately 3:00 p.m., Officer Sturgill showed medical staff a large amount of pink pills (crushed and not crushed) in three separate cups that Crawley had hoarded in his cell. [These were] verified by medical staff to be Elavil 100 mg tablets." Stanford Aff. ¶ 5. Dr. McDuffie discontinued Crawley's Elavil from November 6, 2013, to February 12, 2014. *See id.* ¶¶ 6, 15.

14

*D.*     *Motion to Amend*

Finally, Crawley seeks to add claims alleging that Sturgill and Isbell were deliberately indifferent towards his serious mental-health needs. Mot. to Amend 1–2. Although leave to amend should be freely granted, Fed. R. Civ. P. 15(a)(2), a court may deny leave when it would be futile because the proposed amendment does not allege facts that state a claim for relief against the named defendant. *See Cominelli*, 589 F. Supp. 2d at 712. Thus, Crawley's proposed amendment must contain specific factual allegations that, if accepted as true, "allow[] the court to draw [a] reasonable inference that" either officer is "liable for the misconduct alleged."[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Crawley's proposed claim against Isbell alleges that the officer "produce[d] an unidentified substance to a medical nurse," procured the "bogus drug charge," and gave "false testimony" all "with the foreseeable causation of interfering with [Crawley's] mental health treatment." Mot. to Amend 1; *see also* Am. Compl. ¶ 4; Pl. Aff. ¶¶ 5, 10. He argues that Isbell's "actions, which led to the . . . abrupt discontinuation" of Crawley's medication, amounted to deliberate indifference. Mot. to Amend 1.

---

[9] In recognition of Crawley's *pro se* status and my obligation to hold his pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), I also will consider relevant facts alleged in his Amended Complaint. *See Rankin v. Appalachian Power Co.*, No. 6:14cv47, 2015 WL 412850, at *1 (W.D. Va. Jan. 30, 2015) (noting that courts must generously construe *pro se* pleadings "in order to allow for the development of a potentially meritorious claim") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)); *cf. Shomo v. Apple, Inc.*, No. 7:14cv40, 2015 WL 777620, at *2 (W.D. Va. Feb. 24, 2015) (considering "both the complaint and the factual allegations in Shomo's response to the motion to dismiss in determining whether his claims can survive dismissal").

Crawley's proposed claim against Sturgill alleges that the officer's "false" charge "directly contribut[ed]" to Dr. McDuffie's decision to stop Crawely's medication. Mot. to Amend 1; *see also* Am. Compl. ¶ 4; Pl. Aff. ¶¶ 5, 10. He also alleges that Sturgill "apparently located some Elavil 100 mg pills that he showed [to] medical staff [on] 11/6/13 with the foreseeable causation of getting [Crawley] abruptly discontinued from receiving [his] psychotropic" medication. Mot. to Amend 1.

Crawley's allegations do not state a deliberate-indifference claim against either officer. He does not allege that Isbell or Sturgill actually knew that he had a psychiatric condition or that the medication was prescribed to treat that condition, let alone that they intentionally disregarded a known risk of serious harm to Crawley's health or safety by contacting medical staff about the pills found in his cell. *See Jackson*, 775 F.3d at 178. Thus, allowing Crawley to amend his complaint with the proposed pleading would be futile. *Cominelli*, 589 F. Supp. 2d at 712.

## IV. Conclusion

The Defendants produced admissible evidence showing that there is no genuine dispute as to any material fact on the merits of Crawley's claims and that they are entitled to judgment as a matter of law. Crawley's responses generally restate his factual allegations and legal conclusions, but they contain no admissible evidence establishing a genuine issue for trial on the merits of any claim. Therefore, I respectfully recommend that the presiding District Judge **GRANT** Crawley's motion to voluntarily dismiss Claim 4, ECF No. 30, **GRANT** the Defendants' motion for summary judgment on the merits of Claims 1–3 and 5–9, ECF No. 25, and **DENY** Crawley's motion to amend, ECF No. 30, as futile.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the parties.

ENTERED: July 17, 2015

Joel C. Hoppe
United States Magistrate Judge

17